IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ALLEN LEROY BROWN,

        Plaintiff,

vs.                              Case No. 12-1456-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 21, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 12-25). Plaintiff alleges that he had been disabled since September 19, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through

4

December 31, 2013 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 14). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, lumbago, chronic pain syndrome, headaches, status post right shoulder surgery, depression, anxiety and mood disorder-not otherwise specified (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff could not perform any past relevant work (R. at 23). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24-25).

**III. Are the ALJ's RFC findings supported by substantial evidence in the record?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must

always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.

Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that the plaintiff has the RFC to perform light work, except that he must be afforded the option to sit for up to 30 minutes and then to stand for up to 30 minutes. He is limited to no more than occasional kneeling, crouching, crawling and climbing ladders and scaffolds, and he must avoid climbing ropes. He is limited to no more than occasional overhead reaching with the upper right dominant extremity; he must avoid concentrated exposure to cold temperature extremes and vibration; and he is limited to occupations that do not require exposure to dangerous machinery and unprotected heights. Plaintiff is limited to simple, routine, repetitive tasks not performed in a fast-paced production environment, which involve only simple work-related decisions, and relatively few workplace changes. Plaintiff is limited to no more than occasional interaction with supervisors, coworkers, and the general public (R. at 17).

The court will first address the issue of plaintiff's mental impairments. Plaintiff argues that the ALJ failed to indicate what evidence was credited that supported the mental limitations contained in plaintiff's RFC (Doc. 7 at 15).

The record contains a psychiatric review technique form prepared by Dr. Cohen on December 14, 2009. Dr. Cohen opined that plaintiff did not have severe mental impairments (R. at 491-503). The ALJ gave little weight to this opinion, stating that later evidence showed the plaintiff had greater mental limitations (R. at 23).

The only other medical opinion evidence regarding plaintiff's mental RFC are 2 psychiatric/psychological questionnaires (eight pages) filled out by Dr. Alonzo, a treatment provider; the first is dated September 9, 2010 (R. at 567-574), and the second is dated June 2, 2011 (R. at 607-614). In the first questionnaire, Dr. Alonzo found that plaintiff was moderately limited in 10 categories, and markedly limited in 10 other categories (R. at 570-572). In the second questionnaire, Dr. Alonzo found that plaintiff was mildly limited in 8 categories, moderately limited in 4 categories, and markedly limited in 8 categories (R. at 610-612). Dr. Alonzo identified the clinical findings that supported his diagnoses (R. at 568, 608), and stated that plaintiff is not even capable of performing a low stress job (R. at 573, 613). In the second questionnaire, he stated that plaintiff experiences episodes of deterioration or decompensation in work-like settings (R. at 612).

Dr. Alonzo also indicated in the second questionnaire that plaintiff could not function in and out of his house (R. at 613). The ALJ found that this is completely contrary to plaintiff's appearance at the hearing, his daily activities, his sworn testimony, or the treatment notes from Horizon. The ALJ accorded "little" weight to this opinion, further noting the opinions by Dr. Alonzo lack support by objective testing, in the record or in plaintiff's longitudinal history (R. at 22).

The ALJ found that plaintiff had anger management problems brought on by stress, but found that plaintiff could function in a low-stress environment. In order to resolve plaintiff's stress, anger and resentment, the ALJ limited plaintiff's contact with other workers and supervisors, and further limited him to work in a low-stress environment (R. at 22). The ALJ thus limited plaintiff to simple, routine, repetitive tasks not performed in a fast-paced production environment, which involves only simple work-related decisions and relatively few workplace changes. Plaintiff was also limited to no more than occasional interaction with supervisors, coworkers, and the general public (R. at 17).

However, the ALJ has not cited to any evidence, medical or otherwise, that supports the mental limitations contained in the ALJ's RFC findings for the plaintiff. Furthermore, the ALJ found that plaintiff had moderate limitations in social

9

functioning, and in concentration, persistence or pace (R. at 16). However, the latter limitation is not contained in either the ALJ's RFC findings (R. at 17) or in the hypothetical question posed to the VE (R. at 344).

Even simple work can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention. Moderate impairments may also decrease a claimant's ability to perform simple work. Bowers v. Astrue, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

In Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from

the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions.  The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed.  Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

Neither the ALJ's RFC findings (R. at 17) nor the hypothetical question to the vocational expert (R. at 344) mention the ALJ's own finding that plaintiff has moderate difficulties with concentration, persistence, or pace.  It is clear from the case law that such a limitation may well impact plaintiff's ability to perform even simple jobs.  Because of the failure of the ALJ to include this limitation in his RFC findings or in his hypothetical question to the VE, the court finds that the VE's testimony does not constitute substantial evidence that the Commissioner has met his burden of proving that there are jobs in the national economy that the plaintiff can perform.

Furthermore, as stated in SSR 96-8p, "the RFC assessment must include a narrative discussion describing how the evidence ***supports each conclusion***, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013)(emphasis in original). An exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. The Commissioner must make every reasonable effort to ensure that an acceptable medical source has completed the medical portion of the case review and any applicable RFC assessment. Wells, 727 F.3d at 1071-1072.

In the case before the court, the ALJ has given little weight to any of the medical opinion evidence regarding plaintiff's mental RFC, and has failed to cite to any evidence in support of his mental RFC findings. Therefore, on remand,

the ALJ should carefully reconsider whether further medical evidence is needed on this issue. Wells, 727 F.3d at 1072.

The court will next address the issue of plaintiff's physical impairments. The record includes two questionnaires filled out by Dr. Crater, plaintiff's treating physician. The first one was filled out on June 2, 2010 (R. at 545-552), and the second one was filled out on June 3, 2011 (R. at 598-605). On both forms, Dr. Crater indicated that plaintiff could not sit and stand/walk for 8 hours in an eight-hour day (R. at 547, 601). Dr. Crater also set out numerous other limitations, including limitations in lifting/carrying, and using arms for reaching (essentially precluded) (R. at 548-551, 602-604). In both questionnaires, Dr. Crater set out plaintiff's diagnosis, prognosis, clinical findings that support his diagnosis, laboratory and diagnostic test results, and primary symptoms. Dr. Crater indicated on both questionnaires that plaintiff's symptoms and functional limitations are reasonably consistent with plaintiff's physical and/or emotional impairments (R. at 545-552, 599-605). In the first questionnaire, Dr. Crater opined that plaintiff cannot do a full time competitive job that requires activity on a sustained basis, and that plaintiff's pain, fatigue or other symptoms are severe enough to interfere with attention and concentration (R. at 550).

The ALJ stated that the medical imagery and Dr. Crater's treatment notes do not support such severe restrictions; furthermore, plaintiff had testified that he was advised to use his right arm and does use his right arm. The ALJ gave Dr. Crater's exertional restrictions some weight, as it is supported by the medical record and previous evidence limiting the plaintiff to light work. However, the rest of Dr. Crater's opinions were given little weight, as the ALJ determined that they are not supported by the treatment notes, the overall medical record and previous discussion of plaintiff's shoulder condition (R. at 20).

The record also contains an independent medical evaluation by Dr. Murati dated October 13, 2008 (R. at 440-445). He found that plaintiff could do no work above his right shoulder and could not climb ladders or crawl. Dr. Murati placed no restrictions on plaintiff's ability to sit, stand and/or walk (R. at 445). The ALJ found that Dr. Murati's restrictions are somewhat inconsistent with plaintiff's testimony; however, the ALJ acknowledged that plaintiff has some limitations on the use of the upper right arm. The ALJ gave some weight to Dr. Murati's opinions and limited plaintiff in his use of his right upper extremity (R. at 20).

A physical RFC assessment was prepared and subsequently affirmed by Dr. Tawadros (R. at 483-490, 507). The assessment

14

limited plaintiff to lifting 20 pounds occasionally and 10 pounds frequently (R. at 484). It included some postural restrictions (R. at 485), stated that plaintiff should do no above shoulder work due to injury (R. at 486), and also contained some environmental restrictions (R. at 487). The ALJ gave some weight to this opinion (R. at 20-21), and most of the restrictions on this assessment are included in the ALJ's RFC findings.

Finally, the ALJ mentioned a treatment note from Dr. Prohaska, dated October 14, 2008 (R. at 19-20). In that note, it states the following:

> The patient returns to modified work with permanent work restrictions of occasional over shoulder height work and no lifting greater than 20-25 lbs. The patient is now at maximum medical improvement and is released from further immediate care.

(R. at 451). The limitation by Dr. Prohaska of only occasional over shoulder height work does not preclude occasional over shoulder height work with the right upper extremity. Thus, it is not in conflict with the ALJ's RFC finding limiting plaintiff to no more than occasional overhead reaching with the upper right extremity (R. at 17).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting

physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

In his physical RFC findings, the ALJ gave greater weight to the opinions of Dr. Tawadros, a non-examining physician.  The ALJ also gave some weight to the opinions of Dr. Murati, an examining physician, and gave the least weight to the opinions of Dr. Crater, a treating physician.  The ALJ also noted plaintiff's activities and use of his right arm (R. at 18-20).  Limitations to light work (20 pounds occasionally and 10 pounds frequently) are supported by Dr. Prohaska, Dr. Murati and Dr.

Tawadros. Postural and environmental limitations are consistent with the opinions of Dr. Tawadros.

The ALJ noted the opinions of Dr. Prohaska, a treating physician, but stated that it was a report from a physical therapist (R. at 19-20). It is unclear from the opinion what weight the ALJ gave to this opinion, or whether the ALJ relied on it to support his finding that plaintiff is limited to no more than occasional reaching with the right upper extremity. The weight given to this opinion is important in light of the fact that Dr. Murati, Dr. Crater and Dr. Tawadros all opined that plaintiff cannot perform any above shoulder work with the right upper extremity. In light of the fact that this case is being remanded for other reasons, as set forth above, on remand, the ALJ should articulate what weight was given the various medical opinions regarding plaintiff's physical RFC, including the opinions of Dr. Prohaska.

**IV. Did the ALJ err in his credibility analysis and did the ALJ rely on flawed VE testimony?**

Plaintiff also argues that the ALJ erred in his credibility analysis and that the ALJ relied on flawed VE testimony. The court will not address these remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ reviews its RFC findings, as set forth

17

above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 19th day of March 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge